MEMO ENDORSED
(See p. 3)

# Federal Defenders
OF NEW YORK, INC.

Southern District
81 Main Street, Suite 300
White Plains, N.Y. 10601-4150
Tel: (914) 428-7124  Fax: (914) 948-5109

David E. Patton
*Executive Director
and Attorney-in-Chief*

*Southern District of New York*
*Jennifer L. Brown*
*Attorney-in-Charge*

February 15, 2023

The Honorable Nelson S. Román
United States District Court Judge
Southern District of New York
United States Courthouse
300 Quarropas Street
White Plains, New York 10601

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __2/17/2023__
```

Re:   **United States v. David Zayas**
**22 CR 178 (NSR)**

Dear Honorable Román:

I am writing to ask that Your Honor permit the defense to submit an additional motion in the above referenced case. As background, the defense filed motions on August 15, 2022. As discussed at our conference on November 10, 2022, the Government's response to the defense motions prompted me to seek discovery relating to the license plate reader (LPR) system utilized in this case. *See* Defense Discovery Demand (Exhibit A). The Government responded to my discovery demand on December 21, 2022, but the Government refused to supply me with a wide amount of information I had requesting, stating that my request was either "outside the scope of the Government's discovery obligations," or that the requested information did not exist. *See* Gov't Letter (Exhibit B).[1]

---

[1] The Government, for instance, stated that my request for the "number of historical vehicle scans in the database and the number of unique vehicle scans" was outside the scope of its discovery obligations. Westchester County, however, was willing to give me this information. Additionally, my discovery demand asked for the County's policies and procedures relating to LPR systems and while the Government provided me with one-page of such policies, my FOIL request obtained an additional 8-pages of policies and procedures relating to this LPR system. Additionally, my discovery demand asked for analytic reports relating to this case. The Government indicated that no such reports exist but, according to Westchester County, the county uses an analytic software called "Rekor Scout" which, per Rekor's website, does maintain analytic reports. *See* https://help.rekor.ai/what-is-on-the-analytic-reports-page (last accessed on February 15, 2023). To be clear, I am not alleging that the Government has acted in bad faith and I am not suggesting that the Government is withholding information. Rather, I am trying to explain why this information was, until recently, unknown to me.

In light of the Government's response, in early January I submitted a FOIL request to the Westchester County Department of Public Safety. Westchester County has begun to provide me with material relating to this FOIL request.[2] While Westchester County is still compiling records for me, based on the information provided thus far, I now have reason to believe that Westchester County's LPR system violates the Fourth Amendment because it infringes on the public's privacy rights and amounts to an unreasonable, warrantless search. To briefly demonstrate, Westchester County has informed me that the County's LPR system scans and records the movement of 16.2 million automobiles *per week*, resulting in a centralized database containing the location data of individuals based on roughly 1.6 *billion* LPR scans.[3] This information is preserved and stored for two years.[4] During this two-year time period, the Government – as was done in this case – can learn, without a warrant, the precise location histories of virtually anyone travelling on major roads in Westchester County.[5] The breadth of this LPR system is spectacular and amounts to a warrantless search. *See Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018) (internal citations omitted) ("A person does not surrender all Fourth Amendment protection by venturing in to the public sphere. . . . society's expectation has been that law enforcement agents and others would not – and indeed, in the main, simply could not – secretly monitor and catalogue every single movement of an individual's car for a very long period)." The vast – and, I believe, constitutionally suspect – nature of Westchester's LPR system is not immediately apparent and was therefore not known to me until Westchester County complied with my FOIL request, which is why the Court should grant me the opportunity to file supplemental motions in this case. *See e.g. Commonwealth v. McCarthy,* 484 Mass. 493, 506-509 (2020) (explaining that in order to examine the

---

[2] The County provided an initial disclosure on February 3, 2023, and indicated that the bulk of my request will be provided by the end of the month.

[3] My discovery demand asked the Government to provide me with "the number of historical vehicle scans currently in the database and the number of unique vehicle scans." The Government, while acknowledging that the LPR database records "are estimated [to be] in the billions," did not provide the number of scans in the database or the number of unique vehicle scans, which required me to submit a FOIL request to ascertain this information.

[4] The fact that the information is retained for two years was not known to me until Westchester County responded to my FOIL request.

[5] While it may technically be possible to travel without passing a LPR reader, given that Westchester has roughly 500 LPR readers, and may have access to additional readers controlled by other entities, it is extremely unlikely that individuals can realistically travel by car within Westchester County without having their travels recorded pursuant to Westchester's vast LPR system.

constitutionality of Massachusetts's LPR program, the Court must be provided with specific details about the scope of the LPR system because "it is not the amount of data that the Commonwealth seeks to admit in evidence that counts, but, rather, the amount of data that the government collects or to which it gains access."). For these reasons, I respectfully ask that the Court permit me to file supplemental motions. If permitted, I expect to be able to submit my papers by February 24, 2023.

I have communicated with AUSA Josiah Pertz, and he takes no position regarding this request.

Sincerely,

//s

Benjamin Gold
Assistant Federal Defender

cc:     AUSA Timothy Josiah Pertz

**Defendant's request the file an additional motion is GRANTED. The Court notes that the Government takes no position regarding the filing of the additional motion. The briefing schedule is as follows: moving papers shall be filed March 10, 2023; the Government's response papers shall be filed April 17, 2023; and reply papers shall be filed May 2, 2023. Counsel are directed to provide chambers with two (2) paper courtesy copies and one set by email of their respective motion papers as they are filed.**

**The Evidentiary Hearing remains scheduled for March 14, 2023 at 10:00 am.**

**The Clerk of Court is respectfully requested to terminate the motion at ECF No. 27.**

**Dated: White Plains, NY**
**        February 17, 2023**

SO ORDERED:

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE

# Exhibit A

# Federal Defenders
## OF NEW YORK, INC.

Southern District
81 Main Street, Suite 300
White Plains, N.Y. 10601-4150
Tel: (914) 428-7124  Fax: (914) 948-5109

David E. Patton
*Executive Director
and Attorney-in−Chief*

*Southern District of New York
Jennifer L. Brown
Attorney-in-Charge*

Via E-mail

November 10, 2022

Timothy Josiah Pertz
Assistant United States Attorney
300 Quarropas Street
White Plains, New York  10601

        Re:  US v. David Zayas, 22-Cr-178 (NSR)

Dear Mr. Pertz,

        Thank you for your previous discovery disclosures.  I am writing to request additional material that I believe I am entitled to.  Specifically, relating to the K-9 search that occurred in this case, please provide me with the following:[1]

1. All information, documentation, and data on the K-9's training, and that of the K-9's handler (Officer DiRienzo).  This includes written training material pertaining to the K-9.
2. All information, documentation, and data on the K-9's field performance.
3. All information, documentation, and data on the K-9's instances of false positives, including all known examples or instances of false positives.[2]

        Additionally, I ask that you please provide me with discovery relating to the Westchester County Department of Public Safety's (WCPD) Intelligence Unit and Real Time Crime Center (RTC) which, according to your motion papers and the discovery you have already provided, identified Mr. Zayas's automobile as suspicious, in part based on license plate reader (LPR) data.  This information is discoverable for a number of reasons:  it is material to preparing a defense, it will be utilized in your case in chief, and the data and information amounts to an examination, scientific test or experiment.  *See* Federal Rule of Criminal Procedure Rule 16(a)(1)(E) and (F).  Specifically, I ask that you disclose the following:

1. All data points and photos related to the 2020 gray Chevrolet Equinox bearing the Massachusetts license plate 3CD192, including: the camera which captured the read, the OCR interpretation of the license plate read, the date and time of the image capture, GPS coordinates (the latitude and longitude) of the vehicle plate at capture,

---

[1] This information was ordered to be disclosed on November 7, 2022.  *See* Opinion and Order, P. 23 (ECF # 23).

[2] By false positives, I mean instances where the K-9 indicated that drugs or other contraband were present where no drugs or other contraband were recovered.  I ask for all instances of false-positives, even if you believe that there is an explanation or justification for the K-9's false signal.  *See Kyles v. Whitley*, 514 U.S. 419-450 (1995) (explaining that the prosecution's attempt to *reconcile* the evidence with its case "confuses the weight of the evidence with its favorable tendency*"); U.S. v. Mahaffy*, 693 F.3d 113, 130-33 (2d Cir. 2012) ("Where suppressed evidence is inculpatory as well as exculpatory, and its exculpatory character harmonizes with the theory of the defense, a *Brady* violation has occurred"); *Mendez v. Artuz*, 303 F.3d 411, 414 n.1 (2d Cir. 2002) ("the suppressed information need not wholly discredit the prosecution's theory of the case").

and any and all digital images of the license plate and a contextual photo of the vehicle including overview image additional identifying features of the vehicle such as make, model, color, bumper sticker, or damage, and any capture of the vehicle in the context of the ALPR camera field of vision which provides information about the area immediately surrounding the vehicle and direction of travel.

2. Camera information for each camera that captured Massachusetts license plate 3CD192, including: camera identification number, location, position, angle, number of lanes captured by the camera, make and model, date of installation. For mobile cameras, the officer and vehicle/unit number.

3. Any and all "Analytic Reports" or other reports resulting in the identification of or related to the 2020 gray Chevrolet Equinox bearing the Massachusetts license plate 3CD192, or Mr. Zayas.

4. Any and all "audit trails" or "search audits" and related information related to the ALPR searches in this case including but not limited to:

    a. The initial search query resulting in the identification of the 2020 gray Chevrolet Equinox bearing the Massachusetts license plate 3CD192, as one "exhibiting travel patterns consistent with interstate narcotics trafficking."

    b. All search queries run against the 2020 gray Chevrolet Equinox bearing the Massachusetts license plate 3CD192, during the course of the investigation into the vehicle and Mr. Zayas.

    c. Any and all "advanced search" queries run against the 2020 gray Chevrolet Equinox bearing the Massachusetts license plate 3CD192, during the course of the investigation into the vehicle and Mr. Zayas.

    d. Any and all analytic report requests made during the course of the investigation into the vehicle and Mr. Zayas and the 2020 gray Chevrolet Equinox bearing the Massachusetts license plate 3CD192.

    e. The specific dataset against which any query was run or report requested.

    f. The identity of individuals running any query, search, or requesting/creating a report related to Mr. Zayas or the 2020 gray Chevrolet Equinox bearing the Massachusetts license plate 3CD192.

    g. The date, time and location of all such inquiries.

5. Documents containing the policies and procedures for ALPR systems utilized in this case, including: training requirements, deployment options, operating procedures, hot list management, proper use and maintenance of the technology, data usage (including collection, access, retention, and sharing of data), and sanctions for non-compliance with policies.

6. Documentation, including any memorandum, emails, or documents, regarding the policies and procedures relating to the joint program/investigation between the Westchester Police Department Interdiction Unit, the Westchester Real Time Crime Center, Westchester County Intelligence Unit and HIS-DEA(Homeland Security Drug Enforcement Agency), that identifies vehicles, "exhibiting patterns indicative of narcotics trafficking" or other crime patterns.

7. The location of all fixed ALPR cameras linked to the Westchester County Real Time Crime Center.

8. ALPR database records showing the number of historical vehicle scans currently in the database and the number of unique vehicle scans.

9.  Any and all RTC activity reports provided to other government agencies detailing the use of their ALPR system, including but not limited to, the quarterly reports provided to the NYS Division of Criminal Justice Services.

10. Any and all written agreements memorializing the terms of any ALPR equipment or data sharing programs between Westchester RTC and other law enforcement agencies or other public agencies.

11. Any and all written agreements memorializing the terms of any ALPR equipment or data sharing programs between Westchester RTC and any private agencies.

12. Any and all contracts, purchase orders, or agreements with ALPR hardware or software vendors.

Thank you for your attention to this matter.  Please do not hesitate to call if you have any questions about this request.


Sincerely,

//s

Benjamin Gold
Assistant Federal Defender

# Exhibit B



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*50 Main St. Suite 1100*
*White Plains, New York 10606*

December 21, 2022

**By Email**
Ben Gold, Esq.
Federal Defenders of New York Inc.
81 Main Street, Suite 300
White Plains, New York 10601
Email: ben_gold@fd.org

    Re:    *United States v. David Zayas,* **22 Cr. 178**

Dear Mr. Gold:

       This letter provides discovery pursuant to Rule 16(a) of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P.") and seeks reciprocal discovery. [1] These materials are subject to protective order. (Dkt. No. 8.)

**Document Disclosure by the Government**

       Based on your request for discovery in this case, and per the Court's opinion and order of November 7, 2022 (the "November 7 Opinion," Dkt. No. 23), I have enclosed copies of the following materials, stamped with control numbers USAO_00152, USAO_00154-00177:

A New York State Division of Criminal Justice Services log of narcotics detection training for Officer DiRienzo and K-9 Liberty (the "Training Log");

An audit of the searches for license plate 3CD192;

LPR information regarding license plate 3CD192, including, for instance, photos of the vehicle, camera location, time, and direction of travel;

Policy statements maintained by Westchester County Department of Public Safety ("WCPD") regarding LPR usage;

---

[1] In addition to information provided herein, please note that this Office periodically posts content on social media platforms including Twitter, Facebook and YouTube. Members of the public may post comments in response to the Office's postings. We do not control these user-generated comments, nor do we monitor or regularly review such comments. You may directly access these social media platforms in the event you believe someone may have posted information relevant to this case.

The License Plate Readers Model Policy (March 2021), issued by the New York State Division of Criminal Justice Services; and

A slide deck (the "Driving Route Slide Deck"), prepared by Homeland Security Investigations Special Agent Michael Flanagan, showing photos from Google Maps, representing the route traveled by the defendant between two LPR readers on or about March 10, 2022, and the speed limits of the various segments of the route.

### Disclosure Regarding License Plate Reader Data

By letter dated November 10, 2022 (the "November 10 Discovery Letter"), you requested certain discovery regarding license plate reader ("LPR") data.

The attached Driving Route Slide Deck shows photos of the route traveled by the defendant's vehicle on or about March 10, 2022, between two LPR readers ("LPR Location 1" and "LPR Location 2"). The defendant's Chevy Equinox passes LPR Location 1 at approximately 2:42 p.m., and LPR Location 2 at approximately 2:51 p.m. The distance between LPR Location 1 and LPR Location 2 is approximately 7.6 roadway miles, constituting three segments along which the speed limit varies. According to Special Agent Flanagan's measurements, the speed limit along that 7.6-mile route was 55 mph for approximately 3.3 miles of the distance, 50 mph for approximately 2.9 miles, and 45 mph for approximately 1.4 miles.

Apart from the information in the documents produced, WCPD does not store camera information for each camera that captured the defendant's vehicle. Nor does WCPD maintain a separate "Analytic Report" resulting in the identification of or related to the defendant's vehicle.

To the extent the November 10 Discovery Letter requests "any memorandum, emails or documents" regarding policies and procedures relating to joint investigations involving the WCPD and other agencies, this requests materials that are outside the scope of the Government's discovery obligations. In addition, the Government is unaware of any memorandum setting forth the policies of joint investigations between and among WCPD and Homeland Security Investigations and the Drug Enforcement Administration regarding the identification of vehicles "exhibiting patterns indicative of narcotics trafficking or other crime patterns."

The location of fixed LPR cameras linked to the Westchester County Real Time Crime Center is outside the scope of the Government's discovery obligations. In addition, the locations of such cameras – of which there are hundreds if not thousands – change frequently.

Production of all LPR "database records showing the number of historical vehicle scans currently in the database and the number of unique vehicle scans" would be outside the scope of the Government's discovery obligations in this case. Such records are estimated in the billions.

It is the Government's understanding that WCPD does not maintain activity reports or quarterly the use of the LPR system. WCPD likewise does not maintain "written agreements memorializing the terms of any ALPR equipment or data sharing programs between Westchester RTC and other law enforcement agencies or other public agencies."

It is the Government's understanding that WCPD does not maintain "written agreements memorializing the terms of any ALPR equipment or data sharing programs between Westchester RTC and any private agencies."

It is the Government's understanding that WCPD does not maintain "contracts, purchase orders, or agreements with ALPR hardware or software vendors."

**Disclosure Regarding K-9 Liberty**

The November 7 Opinion orders the Government to produce "discovery on the K-9's training, field performance, and instances of false positives." (Dkt. No. 23 at 2.) The November 10 Letter specifically seeks "[a]ll information, documentation, and data on the K-9's instances where the K-9 indicated that drugs or other contraband were present where no drugs or other contraband were recovered." (November 10 Discovery Letter at 1 n.2.)

Liberty has been deployed into the field approximately 85 times since starting work at WCPD in July 2021. She is trained to signal after detecting the odor of narcotics, an odor which may be present even if law enforcement does not recover narcotics. Such signaling when narcotics are not recovered does not indicate a "false" impression regarding the presence of narcotics, only that the odor of narcotics is present. WCPD does not keep statistics or logs regarding so-called "false positives," nor on the number of times a narcotic substance has been recovered after a positive indication. At times in the field, Liberty may be distracted by traffic, including by loud noises from cars (e.g., mufflers). Liberty's handler, Officer David DiRienzo, would then redirect Liberty back to the task. Accordingly, such distractions amount to temporary pauses in the process of narcotics odor detection rather than a factor that has prevented Liberty from signaling the presence of narcotics odor.

Liberty received training as indicated on the Training Log. In addition, Officer DiRienzo provides daily training as follows. Officer DiRienzo hides between two and four samples of narcotics, of different quantities and types. Officer DiRienzo then deploys Liberty to find each sample. When Liberty alerts, she receives a reward. Initially, this reward was food; more recently, she has come to be rewarded with time to play with a toy, typically a tug toy or ball. At times during this training, Liberty might be temporarily distracted, e.g., by birds, or the need to defecate or urinate – after which Officer DiRienzo would refocus Liberty on the drug-finding task. During this daily training, Liberty has never failed to find the hidden substance.

Liberty received training from Deputy William McKay of the Dutchess County Sheriff's Office, wmckay@dutchessny.gov. The contact information for the K9 accreditation program for the State of New York, which accredited Liberty, is below:

> New York State Division of Criminal Justice Services
> Ashley Sheroka
> Law Enforcement Accreditation Program
> Criminal Justice Program Specialist I
> 80 South Swan St., Albany, NY 12210
> (518) 485-2838 | dcjscanine@dcjs.ny.gov

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

by: __/s/_____
T. Josiah Pertz
Assistant United States Attorney
(914) 993-1966