UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | 22 Cr. 178 (NSR) |
|  | : |  |
| – v. – | : |  |
|  | : |  |
| DAVID ZAYAS | : |  |
|  | : |  |

_____

## MOTION TO COMPEL DISCOVERY

        Benjamin Gold
        Assistant Federal Defender
        Federal Defenders of New York
        81 Main Street, Suite 300
        White Plains, New York 10601

        Sidney Thaxter
        Senior Litigator, 4th Amendment Center
        NACDL
        1660 L. St. NW, 12th Floor
        Washington DC 20036

        Attorneys for DAVID ZAYAS

To:   Honorable Nelson S. Román
       United States District Court Judge
       Southern District of New York
       300 Quarropas Street
       White Plains, New York 10601

       Damian Williams
       United States Attorney
       Southern District of New York
       300 Quarropas Street
       White Plains, New York  10601
       Timothy Josiah Pertz
       Assistant United States Attorney

## Notice of Discovery Motion

Mr. Zayas through counsel, pursuant to Rule 16(a) of Federal Rules of Criminal Procedure, *Brady v. Maryland*, 373 U.S. 83 (1963), and the Due Process Clause of the Fourteenth Amendment of the United States Constitution, moves the Court for an order to compel the government to produce material related to the use of the Westchester County Real Time Crime Center's (hereinafter "RTC") Automatic License Plate Reader (hereinafter "ALPR") system, including but not limited to:

1. Any and all "Analytic Reports" or other reports relating to the identification of the 2020 gray Chevrolet Equinox bearing the Massachusetts license plate 3CD192 as suspicious.[1]
2. Any and all "audit trails" and "search audits" related to the "alert" of the 2020 gray Chevrolet Equinox bearing the Massachusetts license plate 3CD192.
3. The location of all fixed ALPR cameras linked to the Westchester County Real Time Crime Center.
4. Any and all contracts, purchase orders, or agreements with ALPR hardware or software vendors.

I. **Statement of Facts**

In this case Sgt. Kyle McCarrick of Westchester RTC searched the location history of Mr. Zayas and hundreds of millions of other people in order to identify driving patterns he deemed, "consistent with interstate narcotics trafficking." *See Opposition to Motion to Dismiss*, at 4. This search was conducted through the use of a surveillance system built on ALPRs. The Westchester RTC operates one of the largest ALPR databases in the country—currently scanning and archiving, approximately **16.2 million plates per week**. *See RTC FOIL Response*, § 3(B) (Exhibit A).[2] The expansive surveillance network includes 480 ALPR cameras—434 stationary

---

[1] As the Court is aware, the Government has alleged that Westchester County's ALPR system flagged this automobile as suspicious because it alleged "exhibited traffic patterns consistent with narcotics trafficking." *See* Gov't Opp, P. 2 (ECF # 18).

[2] *See also, RTC: Westchester County, NY,* MOBOTIX https://www.mobotix.com/en/lpr-westchester-county-ny (last visited March 11, 2023).

Page | 1

systems and 46 mobile systems. *Id.* at § 3(C). Its cameras also record video footage, GPS coordinates, and utilize artificial intelligence to track and record the make, model, and color of the vehicles in addition to the plate number.[3] The exact location of these cameras is unknown as the government has thus far refused to provide that information. *See Government Discovery Disclosure* 12/21/22, ¶ 13 (Exhibit B). However, the database of location data collected by these cameras currently contains two years' worth of scans, or over ***1.6 billion images*[4]** of license plates from **hundreds of millions of vehicles** belonging to Westchester County citizens and anyone else who traveled through the area regardless of any connection to a crime. *RTC FOIL Response*, § 4(A). The scope of this surveillance network is likely even larger than reported as the RTC participates in data-sharing with other local departments and has access to a national database containing an unknown number of records.[5]

In October, 2021, Sgt. McCarrick, queried RTC's massive location database to identify travel patterns they believed to be "consistent with narcotics trafficking." *See Opposition to Motion to Suppress*, at 4. The exact terms of this search and the results are unknown to Mr. Zayas at this time.[6] However, it appears the query was conducted using the Rekor Scout "Analytics Reports" page by conducting an "Interdiction Analysis."[7] Additionally, the query

---

[3] *Id.*
[4] The number estimated by RTC was 1,664,000,000. However, that appears to be an error based on rounding down the weekly numbers to 16 million. The actual number of scans in the database using their statistic of 16.2 million weekly scans is 1,684,800,000.
[5] RTC is also a part of the Rekor Public Safety Network ("RPSN") which shares ALPR data across every law enforcement agency enrolled in the network. *Rekor Systems Launches Public Safety Network*, BLOOMBERG: BUSINESS (Aug. 21, 2019) https://www.bloomberg.com/press-releases/2019-08-21/rekor-systems-launches-public-safety-network.
[6] The terms of this search can be found in the "Interdiction Analysis" report which we believe is in the possession of law enforcement and which is, in part, the subject of this motion.
[7] FOIL records and publicly available information indicate that RTC uses Rekor Scout as the software platform for their ALPR database. *See RTC FOIL Response*, § 3(B). This platform has a feature called "Interdiction Analysis" that allows the RTC to conduct queries described by the government in their motion in opposition to defense counsels initial motion to suppress. *See Opposition to Motion to Suppress*, at 4.

appears to have been run across the entire dataset of RTC ALPR records over a period of two years.[8]

Upon searching Mr. Zayas's personal location information over a two-year period police located two trips that they deemed suspicious. One of these, occurring on October 16, 2020, showed Mr. Zayas passing southbound through Scarsdale at 12:44 p.m. and then northbound through Yonkers at 3:31 p.m. The Scarsdale scan provide by the government (unlike the other relevant scans) does not show an image of the plates or the vehicle and instead shows an error message. Similarly, that scan reads "Black Chevrolet," instead of the same "Black Chevrolet SUV" associated with the other scan that day. On August 21, 2021, the records show that the vehicle passed southbound through Rye at 8:17 a.m. and through Yonkers at 9:10 a.m. Police did not find the remainder of the location data suspicious. However, they continued to investigate Mr. Zayas using other data from the RTC surveillance network, among other sources, and eventually "alerted the vehicle" in the ALPR system. When that alert was triggered by Mr. Zayas's travel through Westchester County, Sgt. McCarrick notified P.O. DiRienzo who began following and eventually pulled over Mr. Zayas. Police then used the ALPR data as part of their justification for the stop of the vehicle and the subsequent extension of that stop. *See Opposition to Motion to Dismiss*, at 8-13, 14-15.

Thus, the identification of Mr. Zayas and investigation into him began with the suspicionless search of his ALPR location information and culminated with law enforcement seizing him and prolonging that seizure so that his vehicle could be searched.  Therefore, all evidence obtained in this case flowed from the initial search of his ALPR records.

---

[8] FOIL records reveal the retention period for RTC's ALPR records is two years. *See RTC FOIL Response*, § 4(A). Additionally, the records related to Mr. Zayas span approximately a two-year period.

II.     **Procedural History**

The defense began receiving discovery in April, 2022 and discovery has continued on a rolling basis through early 2023. While the Government has provided a significant amount of discovery, the Government has provided very little information about the ALPR system that was utilized in this case. As such, on November 10, 2022, defense counsel issued a formal discovery demand requesting, amongst other things, the following:

1. Any and all "Analytic Reports" or other reports resulting in the identification of or related to the 2020 gray Chevrolet Equinox bearing the Massachusetts license plate 3CD192, or Mr. Zayas.
2. Any and all "audit trails" "search audits" related to the "alert" of the 2020 gray Chevrolet Equinox bearing the Massachusetts license plate 3CD192.
3. The location of all fixed ALPR cameras linked to the Westchester County Real Time Crime Center.
4. Any and all contracts, purchase orders, or agreements with ALPR hardware or software vendors.

*Defense Discovery Demand* 11/10/22 (Exhibit C).

The government complied with portions of the demand that are not addressed in this motion. However, as to the request for "Analytic Reports," the government claimed that the WCPD does not "maintain a separate 'Analytic Report' resulting in the identification of or related to the defendant's vehicle." *Government Discovery Disclosure*, at P. 2. The government provided a set of "audit trails," however, these did not include any information relating to the "alert" placed on the 2020 gray Chevrolet Equinox bearing the Massachusetts license plate 3CD192. Furthermore, the government stated it was their "understanding that WCPD does not maintain "contracts, purchase orders, or agreements with ALPR hardware or software vendors." *Id.* at ¶ 17. However, based on responses to FOIL requests WCPD has this information.[9]

---

[9] The WCPD has responded to a portion of the FOIL request. They also indicated that they would respond to a request related to the invoices for the purchase of ALPR technology and interactions with vendors, however, they requested additional time to comply with the demand given workload and staffing limitations.

Page | 4

### III.     Arguments

The requested discovery must be turned over because it is necessary for Mr. Zayas to challenge the accuracy of the ALPR data at his hearing and trial. It is also necessary to raise his constitutional challenge to his stop and the government's long-term monitoring of his location. First, the requested items are necessary to support his challenge to the accuracy of one of the alleged scans of his license plate. Second, they are necessary to challenge his stop based on the investigation into his vehicle and an "alert" placed on the vehicle. Finally, they are required to demonstrate that the "deeply revealing nature" of ALPRs' including their "depth, breadth, and comprehensive reach" support a finding of reasonable expectation to privacy in ALPR location data. *See Defense Motion to Suppress* (ECF # 34).

### A. The Requested Discovery Is Required Because It Is Necessary to Demonstrate the Source of Errors With an Alleged October 16, 2020, Scan.

The requested records are necessary to challenge the prosecution's claims at the hearing and trial regarding Mr. Zayas's travel history. Specifically, Mr. Zayas intends to demonstrate deficiencies of the cameras and scanning software, which will support his challenge to the accuracy of the alleged 12:44 p.m. October 16, 2020, scan of his plate.

The prosecution has stated that they intend to introduce evidence of scans of the license plate on October 16, 2020, because the turnaround time in that case was under one hour, which they will argue is "consistent with narcotics trafficking." *See Opposition to Motion to Dismiss*, at 3. However, the October 16, 2020, scans provided by the prosecution demonstrate possible errors in the ALPR network. The 12:44 p.m. scan (unlike the other relevant scans) does not show an image of the plates or the vehicle and instead displays an "error" message. Similarly, that scan reads "Black Chevrolet" instead of the same "Black Chevrolet SUV" associated with the other

scan from that day. Therefore, the records indicate a potential error in the scan and defense intends to challenge the accuracy of the plate scanning technology in that instance.

The information necessary to challenge the accuracy of that license plate scan can be found in the following papers, documents, or data, or copies or portions thereof:

5. Any and all "Analytic Reports" or other reports resulting in the identification of or related to the 2020 gray Chevrolet Equinox bearing the Massachusetts license plate 3CD192.
6. Any and all contracts, purchase orders, or agreements with ALPR hardware or software vendors.

*See Defense Discovery Demand* 10/22/22 ¶ 3.

Therefore, those portions of the requested discovery are required to prepare Mr. Zayas's defense and must be turned over. *See* Fed. R. Crim. P. 16(a)(1)(E); *Brady v. Maryland*, 373 U.S. 83 (1963).

**B. The Requested Discovery is Necessary to Challenge the Validity of Mr. Zayas's Stop.**

Mr. Zayas has challenged the validity of the stop and subsequent search of his vehicle. See Motions to Suppress (ECF # 15, 34). The requested discovery is directly related to those Fourth Amendment challenges raised by Mr. Zayas. Therefore, the government must turn over the "Interdiction Analysis" reports and all information related to the "alert" of his vehicle.

The investigation into Mr. Zayas began with an "Interdiction Analysis" of the ALPR database that the government argues showed travel patterns they believed to be "consistent with narcotics trafficking." In fact, according to the government, the primary basis for the stop was the investigation into Mr. Zayas's travel patterns. *See Opposition to Motion to Suppress*, at 9-13. Westchester RTC uses Rekor Scout as their ALPR software platform. *See RTC FOIL Response*, § 3(B). When using Rekor Scout an "Interdiction Analysis" is conducted using the "Analytic Reports" page. *See What is on the Analytic Reports page?*, at ¶ 1, *supra* n.1. In order to conduct

an "Interdiction Analysis" a user must create a new report. *Id.* First the user chooses a type of analysis (in this case "Interdiction Analysis"). *Id.* Then the user selects "Create" and adjusts the configuration parameters. *Id.* The report is then ***automatically stored*** for further and/or later review. *Id.*

Because the "Interdiction Analysis" was the basis of the initial investigation into Mr. Zayas and part of the justification for his stop, extended detention, and subsequent search of his vehicle, Mr. Zayas requested a copy of the report. However, the government claimed that the WCPD does not "maintain a separate 'Analytic Report' resulting in the identification of or related to the defendant's vehicle." *Government Discovery Disclosure*, at ¶ 11. Based on the information provided in response to FOIL requests and the publicly available information provided by Rekor, it appears that the Government is mistaken in its claim that these reports do not exist as, per the information cited above, "Interdiction Analysis" reports and "Analytic Report[s]" are automatically generated by Rekor software.

Additionally, Mr. Zayas was later identified and stopped due to an "alert" that his vehicle was in Westchester County. However, the government has yet to provide any discovery relating to this alert, or in relation to the exact reasons that his automobile was "flagged" as suspicious. Instead, they have only provided general and conclusory statements that his whereabouts were "suspicious" and a spreadsheets showing when his plates were scanned by Westchester's various ALPR cameras. Therefore, the discovery provided was incomplete as to this request and does not allow the defense an opportunity to meaningfully understand the Government's rational as to why Mr. Zayas's travels were "suspicious."

### C. The Requested Discovery Is Necessary to Challenge the Government's Long-Term Tracking of Mr. Zayas's Location History.

Mr. Zayas is challenging the government's use of ALPR data to engage in long-term tracking of his location. *See* Motion to Suppress (ECF # 34). The extent to which he is entitled to discovery then requires an examination of cases analyzing ALPRs and other long-term location tracking. *See United States v. Soto-Zuniga*, 837 F.3d 992, 998 (9th Cir. 2016); *United States v. Wolfenbarger*, No. 16-CR-00519-LHK-1 2018 WL 4913753 (N.D. Ca. Oct. 10, 2018).

The Supreme Court has made it clear that a person does not surrender all Fourth Amendment protection by venturing into the public sphere. *Carpenter v. United States*, 138 S.Ct. 2206, 2217 (2018). Individuals maintain a reasonable expectation to privacy in their movement over extended periods of time- even when traveling on open roads and in public view. *See id.* (citing *United States. v. Jones*, 565 U.S. 400, 430, (2012) (Alito, J., concurring); *id.* at 415 (Sotomayor, J., concurring). In *Carpenter,* the Court, in finding an expectation to privacy in seven days of cell site location information (CSLI), examined the "deeply revealing nature of CSLI, its depth, breadth, and comprehensive reach…." *Id.* at 2223. The Court's analysis focused on several factors: 1) the length of the surveillance, *id.* at 2215, 2220; 2) the precision of the technique, *id.* at 2219; 3) the automatic and indiscriminate collection, *id.* at 2218; 4) the inescapable nature of the technique, and 5) the ability to retrospectively obtain otherwise unknowable information. *Id.*

However, the depth, breadth, and comprehensive reach of an ALPR surveillance network is not immediately apparent or publicly known. *See, e.g., Commonwealth v. McCarthy*, 484 Mass. 493, 508 (2020). To determine whether the ALPR search in any case reaches the depth, breadth, and comprehensive reach of CSLI the court must have a fully developed record of the network and its capabilities. *See id.* In *McCarthy* the defendant challenged his arrest based on the

collection of three months of historical ALPR location data and real time alerts used by the police when he crossed the Bourne and Sagamore bridges leading into and out of Cape Cod. *Id.* at 494. The court held that his interest in the whole of his public movements "potentially could be implicated by the widespread use of ALPRs…" *Id.* at 494. The court explained, "With enough cameras in enough locations, the historic location data from an ALPR system in Massachusetts would invade a reasonable expectation of privacy and would constitute a search for constitutional purposes. The one-year retention period indicated in the EOPSS retention policy certainly is long enough to warrant constitutional protection." *Id.* at 506. However, the court noted the record lacked any information regarding the number of records collected by the government, the scope of the search of those records, the number of cameras in the network, and the placement of those cameras. *Id.* at 504-509; *id.* at 515 (Gants, C.J. concurring). As a result, the court held on the limited record developed in that case, they could not find a reasonable expectation of privacy in the ALPR records. *Id.* at 508-509.

      On November 10, 2022, defense counsel demanded disclosure, in relevant part, of the following: "Analytic Reports", data retention periods of the ALPR system, the number of plates scanned into the system, the location of fixed ALPR units, and all contracts, purchase orders, or agreements with ALPR hardware or software vendors. The prosecution refused to provide any of that information for various reasons. *See Government Discovery Disclosure*. FOIL demands reveal that the RTC the data retention period is two years and that the system contains over 1.6 billion scans at any given time. As a result, defense is no longer requesting that information. However, defense is still missing key components of the demand—the "Interdiction Analysis" report, the location of the fixed license plate readers, and documents relating to the capabilities

of the surveillance network.[10] As a result, the exact scope and nature of the search is not known to Mr. Zayas and like the defendant in *McCarthy,* he is unable to make a complete record at the suppression hearing. *See McCarthy*, 484 Mass. at 508-509.

Therefore, the following requests are directly targeted at the facts considered in *Carpenter* and *McCarthy* including the precision of the location tool, the number of records collected by the government, and the scope of the search of those records. This information can be found in following papers, documents, or data, or copies or portions thereof:

- "Analytic Reports" or other reports resulting in the identification of or related to the 2020 gray Chevrolet Equinox bearing the Massachusetts license plate 3CD192, or Mr. Zayas.
- The location of all fixed ALPR cameras linked to the Westchester County Real Time Crime Center.
- Contracts, purchase orders, or agreements with ALPR hardware or software vendors.

*See Defense Discovery Demand* 10/22/22 ¶ 3, 4, 5, 7, & 12.

Therefore, those portions of the requested discovery are required to prepare Mr. Zayas's 4th Amendment Challenge and must be turned over. *See* Fed. R. Crim. P. 16(a)(1)(E); *Brady v. Maryland*, 373 U.S. 83 (1963); *see also Soto-Zuniga*, 837 F.3d at 998; *Wolfenbarger*, 2018 WL 4913753 at *4.

## Conclusion

Mr. Zayas's discovery demand was carefully tailored to prepare his defense at trial and his specific Fourth Amendment challenge. All the records requested are required to challenge the accuracy of the October 16, 2022, scan, demonstrate the illegality of his stop, and to show the extent that the network subverted his reasonable expectation of privacy in his physical movements. Therefore, the requested discovery must be provided to the defense.

---

[10] Presumably, the contracts and purchase orders and other agreements relating to the ALPR system will detail the system's scope and capabilities, which is essential to any meaningful examination of the system's constitutionality.

Dated:  March 11, 2023                              Respectfully Submitted,
       White Plains, New York

/s/_____

Benjamin Gold
Assistant Federal Defender
Federal Defenders of New York
81 Main Street, Suite 300
White Plains, New York 10601

Sidney Thaxter
Senior Litigator, 4th Amendment Center
NACDL
1660 L. St. NW, 12th Floor
Washington DC 20036

Attorneys for DAVID ZAYAS